Garland, J.
The plaintiff alleges that, in the month of April, 1841, he obtained a judgment in the District Court of St. Mary against Benjamin M. Mayes, one of the present defendants, for $7869, 74, with interest and costs. That on the 28th. of April, an execution was issued on said judgment, and, by the sheriff *21 of the parish, levied on a number of slaves, which were duly-advertised for sale in the month of June, 1S41. He further says, that the said Mayes, with the intention to cheat and defraud him out of his debt and legal rights, a few days before the day of sale, caused said slaves to be secretly and clandestinely removed from, or taken out of, the jurisdiction of the courts of this state, and conveyed to the republic of Texas. That, in the removal of said slaves, the defendant, Mayes, was aided and assisted by his co-defendant Berwick, who knew that the said slaves were mortgaged to the plaintiff; that he hada judgment against Mayes, and that the slaves were advertised for sale under the execution aforesaid ; in consequence of which illegal acts of said Mayes and Berwick, in removing said slaves out of the state, or causing them to be removed, he, the petitioner, has sustained damages to a large amount, for which he prays for judgment.
The curator, ad hoc,of Mayes, who resides in Texas, answered by a general denial. Berwick denies generally the allegations of the plaintiff. He says that he never had any thing to do with the slaves of Mayes; that plaintiff had no mortgage on them when they were taken away, and that this suit is vexatious. He further says, that the plaintiff has instituted a suit in Texas against Mayes for his claim, and is endeavoring to have the slaves there subjected to it; also, that said plaintiff has instituted a suit in the parish of St. Mary against P. Delahoussaye, Sheriff of said parish, in which he claims damages to an amount sufficient to cover his debt; wherefore he prays to be discharged.
The evidence is, that Mayes owed the plaintiff upwards of $13,000, payable in 1841 and 1842; that to secure the payment of the sum owing, the former, who resided in Mississippi at the time the debt was contracted, executed a deed of trust on a number of slaves and other property, to secure the payment of the debt. He subsequently removed to the parish of St. Mary, and sometime after the first instalments of the debt became due, a suit was instituted and judgment confessed for the sum of $7869, 74, with interest and costs ; but neither the deed of trust or judgment were recorded in St. Mary, previous to the removal of the slaves by Mayes. Execution was issued, and a levy made by the Sheriff on upwards of twenty slaves, by the consent of *22 Mayes, and one Bethel, the reputed agent of plaintiff. It was agreed that the slaves and other property should remain in the possession of Mayes until the day of sale, the Sheriff dispensing with the giving of a bond and security to produce the property on the day of sale. The sale of the property was duly advertised in the newspaper published in the parish, and at different public places. Berwick was'a subscriber to the paper, which was regularly sent to him by mail every week, a distance of about twenty or twenty-five miles. The advertisement was a long one, and conspicuous in the paper ; but there is no positive evidence that he received the papers containing it. Some twelve or fifteen days before the slaves and property were to be sold, the defendant Berwick went to the house of one Daniel Keiffer, on the bayou Chaver, and told him that there was a man named Mayes who wanted to carry some slaves to Texas, and that he, Keiffer, could get well paid for carrying them there. Berwick told the witness, Keiffer, that he could get a negro man for it. It was arranged between Berwick and Keiffer that the latter should come up in the evening, — the witness thinks it was a Sunday evening. Keiffer and a man named Fry, came with two boats and took the negroes on board in the night, between midnight and morning. The negroes were carried into the Sabine River, and landed on the Texas side. Mayes went with them. The boats left the bay sometime before day, in the morning. Keiffer says, that he did not see Berwick the night they left with the negroes; but Fry says, that when they came on board he heard some person speak, whom he took to be Nathan Berwick. It was very dark. He had heard Berwick speak before that night. Fry says, that the bargain made with Keiffer was kept a secret from him, aud made in such a manner as to be “ as concealed as possible.” Berwick and Mayes resided very near each other — about half a mile apart, and were friends. There is no evidence that either Keiffer or Fry ever had any communication with Mayes previous to going off with the slaves, except through Berwick. Upwards of twenty slaves were taken away in the boats.
These are the material facts of the case, and upon them, under *23 a charge from the judge presiding, the jury found a verdict for the defendant Berwick,* and the plaintiif has appealed.
Our attention has been directed to a bill of exceptions, taken by the counsel for the plaintiif, to the refusal of the judge to charge the jury as requested. The counsel requested the judge to instruct the jury :
1st. “ That the property of Mayes, although by the consent of plaintiff’s agent it remained in the actual possession of .Mayes, was in the custody of the Sheriff; and that if the jury were satisfied that the defendant Berwick had aided and assisted the said Mayes in removing the same out of the state, and the plaintiif had, in consequence thereof, suffered any damage, he was bound, under the article 2294 of the Civil Code, to repair it.
2d. “ That a deed of trust executed in Mississippi, when duly recorded in this state, had the same force and effect as a conventional mortgage under our laws, and that the deed of trust, executed by Mayes, in favor of plaintiff, being recorded in the Parish Judge’s office of St. Mary, operated as such.
3d. “ That although it is conceded that a debtor has the right of removing his property out of the state, when not mortgaged, yet, if done in a clandestine manner, the person aiding and assisting in the act, with a knowledge of the circumstances, makes himself responsible for the damage resulting therefrom.” The judge refused to charge the jury as requested, but charged them in substance as follows :
1st. “ The jury are informed that it is only those acts of man morally wrong in themselves, or prohibited by some law, which, when committed, produces injury to another, which enables the party injured to recover damages from the party committing, or aiding to commit the act.
2d. “ That in those kinds of actions, the proof ought to be clear and satisfactory in favor of the plaintiff, to enable him to recover from a person who commits the act, and is no gainer thereby.
3d. “ That as to the deed of trust passed in Mississippi be *24 tween the parties, and contemplated to be carried into effect there, although it might, as between them, produce the same effects as a mortgage here, yet it does not come within the spirit of our penal law, forbidding such property being taken out of the limits of Louisiana; and that, in the opinion of the court, the party might carry it back again to Mississippi, or any other adjoining country without incurring any penalty for doing so under the law j and those who might aid him would not, in this view, be amenable in damages. And that the judgment obtained by the plaintiff against Mayes, not being recorded when the slaves were taken out of the state, there was no judicial mortgage on them under our law.
4th. “ That by advertising the slaves in the manner related by the evidence, the court thought there was not such a change of possession of them into the custody of the law, as if they had been seized on in the ordinary way; and as Bethel, the agent of plaintiff, had agreed that Mayes might keep possession of them to the day of sale, if Mayes abused this possession, and ran them off, he would not be guilty of larceny, as in other cases where the defendant should clandestinely carry off his property, when the Sheriff had levied on it.
“ But though this was the opinion of the court, the jury was directed, if they were satisfied that Berwick knew they were advertised, and, knowing this, did aid Mayes to run off the slaves to the injury of Smith, the plaintiff, when well satisfied of this knowledge and acts of Berwick, they ought to find damages against him to the extent of the injury the plaintiff has sustained by this act. But if not satisfied of this, they ought to find for the defendant. And though he may have carried the message to the owner of the boat from Mayes, it was for the jury to judge whether it was done heedlessly, or with the intention above mentioned, in connection with other circumstances.”
We are satisfied that the charge of the judge was incorrect and illegal in several respects, and in some degree contradictory in itself. Nor are we satisfied that the judge should have charged the jury precisely in the terms required by the counsel for the plaintiff. Instead of pointing out in detail each particular error in the charge requested, and that given, it will be more *25 plain and simple to state what the law is, and what the judge should have told the jury. The law is, that every act of man that causes damage to another, obliges him, by whose fault it happened, to repair it. Every person is responsible for the damages he occasions, not merely by his act, but by his negligence, his imprudence, or want of skill. Civ. Code, arts. 2294, 2295. And he who causes another to do an unlawful act, or assists or encourages in the commission of it, is answerable, jointly with that person, for the damage caused by such act. art. 2304. The property of a debtor is the common pledge of his creditors, and whosoever unlawfully deprives them of the benefit of that pledge, or aids or assists in doing so, is liable to the creditor, who proves that he has beeen injured by it, and must compensate him in damages. In the present case we think that the slaves, although left in the possession of Mayes, were in the legal custody of the Sheriff, after the seizure; and although the consent of the plaintiff’s agent, that they should remain with Mayes, may probably protect the Sheriff from any claim for damages on the part oí the plaintiff, yet the consent amounted to nothing more than that Mayes should be the keeper of the slaves until the day of sale; and neither he, nor any other person, had a right to carry them off to the injury of the plaintiff.
We are not prepared to say, that the deed of trust executed in Mississippi, when recorded in this state, has technically the force and effect of a conventional mortgage according to our laws. But, as between the parties, it operates as a lien on the property mentioned in it, and, when recorded, it gave a preference in favor of the plaintiff over creditors, having no such preference or security; and neither the defendant Mayes, nor Berwick, hada right to deprive him of that preference or lien, by running off the property on which it operated.
Tt is true, a debtor has a right to remove out of the state, with his property, when not mortgaged, if he does not do so in a clandestine manner, and with the intention of defrauding his creditors : but if it appears that the object in removing the property, is to cheat and defraud a creditor or creditors, then the debtor is responsible in damages, as well as all who aid and assist him, whether the property be mortgaged or not. If the property be *26 mortgaged, then the parties may be punished criminally; but if not, they are civilly responsible for all the injury caused, by the act.
The Judge should have instructed the jury, that it is morally wrong and prohibited by law, for a debtor to abscond with his property, to the injury of his creditors ; that it is not necessary that the removal of the property should be in sucha manner, and under such circumstances, as would subject the parties concerned to punishment in a criminal prosecution; but, that the true question is, has the creditor been injured by the act; if so, he is entitled to damages.
The Judge should have instructed the jury, that in actions of this kind, as well as in other actions for damages, the evidence ought to be satisfactory in favor of the plaintiff, to enable him to recover from a person who commits the act, and is no gainer thereby. But this peculiar species of action, does not form an exception to the general rule ; and only such testimony is required as will produce conviction on the minds of the jury that the defendant is culpable.
It is true, that if the judgment in favor of the plaintiff was not recorded in the manner required by law, it did not operate as a judicial mortgage on the property of Mayes; but that in our opinion makes no difference, as neither he, nor any one else, had a right to run away with his property, and thus defraud his creditors.
This court is satisfied, and the jury should have been so instructed, that the seizure of the slaves, and the advertisement of them as stated on the trial, did place them in the custody of the Sheriff, subject to the limitation heretofore mentioned as to damages against him; that the agreement of the plaintiff’s agent with Mayes, and the Sheriff consenting thereto, constituted Mayes the keeper of the property under the law , and that if he abused the possession he had, to run away with it, he was as culpable as if he had taken the slaves out of the actual custody of the Sheriff. In a moral sense he was more culpable, if possible ; for, in addition to a breach of the law, he violated the confidence the parties reposed in his good faith and honesty.
The Judge was right in instructing the jury that, if they were satisfied that the defendant Berwick knew that the slaves were *27 advertised, and so knowing, did aid Mayes to run away with them to the injury of the plaintiff, they ought to find damages against him to the extent of the injury sustained by his act; but, if not satisfied, that they ought to find for the defendant. But the Judge should further have told the jury that if they believed that Berwick knew, or had good reason to believe, that it was the purpose of Mayes to defraud the plaintiff by running the slaves off to Texas, that then, whether he knew they were advertised or not, he is responsible in damages, if he assisted him; and that, in coming to a conclusion on this point, the jury should take into consideration all the circumstances, the time and manner of leaving, the relations existing between the parties, and every other fact that is proved, calculated to induce a conviction that he knew of the dishonest purposes of Mayes.
The jury should further have been instructed, that it is no excuse for the defendant Berwick, that he acted heedlessly or imprudently in the matter. Men are as responsible for their inn prudence and negligence, as for other acts, if they cause damage, to another. In 1 Robinson 178, we decided that the owner of an omnibus was responsible for damage occasioned by the negligence, or want of skill, in the driver, or the vicious temper of the horses belonging to him. In the case of Logan v. The Ponchartrain Rail Road Company, we decided that the defendants were responsible for the negligence of their agents or servants, in not taking proper care of the plaintiff’s baggage that was placed in one of their cars, whereby it was lost. If a man owns a vicious horse, and heedlessly rides him into a crowd of people, and he kicks one, and'does him an injury, the party is responsible in damages. Many other cases could be cited, if the principle were doubtful; but it is not.
The counsel for the defendant Berwick, insists that, as the plaintiff is prosecuting a suit in Texas against Mayes, to recover his debt there, no action can be maintained in this state against Berwick, until such suit is decided. We are not of that opinion. If any thing has been made by the proceeding in Texas, the defendant, by showing the amount, will be entitled to a deduction on the damages, if he be held responsible for them. This question arose in the case of Irish v. Wright, &c., decided in. *28 July, 1844, which was a suit similar in many respects to the present.
Voorhies and Olivier for the appellant.
Splane, contra.
As to the measure of damages, if the defendant be held responsible for any, we are of opinion that the full value of the slaves is the proper standard, if the debt of the plaintiff amounts to so much.
The jury found a verdict for the defendant, Berwick; but as we think it probable that the charge of the Judge in some degree contributed to that result, we are of opinion that it should be set aside, and the cause remanded for a new trial.
It is, therefore, ordered and decreed, that the verdict of the jury be set aside, the judgment annulled and reversed, and the cause remanded for a new trial, with directions to the Judge, in the trial thereof, to charge the jury in the manner stated in this opinion of the court, and, in other respects, to proceed according to law ; the defendant and appellee to pay the costs of this appeal.

 The case was not tried as to Mayes.